Thank you. Good morning and may it please the Court. Norman Leon for the appellant, Domino's Pizza, LLC. Your Honors, the District Court's order denying Domino's motion to compel arbitration should be reversed and this Court should remand with instructions that the Court grant that motion. Because once Domino's role in interstate commerce is taken out of the analysis and Saxon tells us that it must be, all that's left of this case are delivery drivers that pick up product from Domino's in-state supply center to fill orders placed by in-state franchisees for product that Domino's purchases and sends to the supply center in anticipation of future sales and not in response to any franchisee's particular order. All of those facts, Your Honors, are undisputed on this record and there is not one circuit case decision in the country that has ever found the Section 1 exemption satisfied under those circumstances. In fact, all of the cases including precedent from the United States Supreme Court and from this Court analyzing that exact same language has concluded that the Section 1 exemption is not satisfied under those circumstances. Is it your position that Rittman is no longer good law? I think that depends on which part of Rittman you're talking about, Your Honor. The first part of Rittman, which was key to this Court's prior analysis, was that the critical factor in determining the applicability of the Section 1 exemption was the employer's course of business. Right. And that clearly is no longer true. Saxon says we should focus on what the workers do. Correct, Your Honor. My problem is this and I want you to respond to it. In this circuit, we're required to follow, our three judge panels are required to follow prior decisions unless they're clearly inconsistent with the Supreme Court's subsequent decision. The Supreme Court leaves open whether Rittman was correctly decided. Obviously, that means we can still rely on Rittman because it hasn't been overruled by the Supreme Court. If we do rely on Rittman, how do you win? We win because Rittman says we win and I'll tell Your Honor why. Well, didn't we deal with that last time? We did deal with that to a certain degree, Your Honor, but this Court disregarded what I think is precedent that's right on point, both from the Supreme Court and this Court, on what it means for goods to be in the stream of commerce because Rittman commanded that the dispositive factor was the employer's course of business. Well, but Rittman also focused on what the workers did and it said they were the last leg of the journey of these goods in interstate commerce. The Supreme Court says, we'll leave open whether or not somebody who's a last leg worker is involved in interstate commerce. So tell me why, if I have to follow Rittman, I don't have to once again affirm the district court. Because Rittman drew a distinction between when goods are in the stream of interstate commerce and when they leave it. That is directly on point with the undisputed facts of this case. In Rittman, the Court held that goods were no longer in the stream of commerce, or rather were still in the stream of commerce, because they only stopped at a warehouse to change vehicles as part of what was always an interstate journey. If the goods had been stored in the warehouse for future sales, those goods would no longer be in the stream of commerce. Does Rittman say that? Rittman draws that exact distinction. No, Rittman says these are goods that, although they paused in the warehouse, were on an interstate journey the entire time. Focusing on the mushrooms, for example, in your case, because they're the easiest ones. They were on an interstate journey the entire time, were they not? They paused at the warehouse, but they then moved on to their eventual destination. But there is a distinction, Your Honor, between goods that end up in an in-state warehouse in anticipation of future sales, and those, like the ones dealt with in Rittman. What case draws that distinction? I know you're telling me that's not the facts in Rittman, but is there a case that draws that distinction? Yes. We've cited several in our papers. Plaintiffs have cited none. Obviously, there's the First Circus decision in Imediato, there's the Fifth Circuit decision in Cintas, there's the Massachusetts. Imediato is a little bit different, because Imediato involves the transformation of goods at an intermediate point, transformation of goods at the restaurant into something else, and then they're delivered by Grubhub people, correct? That's only partially correct, Your Honor. In Imediato, the plaintiffs were also delivering goods that they picked up from grocery stores and convenience stores that were not modified at all. But let me move off of those cases. What about the First Circuit's subsequent case, the case that involved marketing materials that are delivered to the houses of local transportation workers, and then moved on to the eventual buyers, and the First Circuit says, under our previous decisions, these folks are involved in interstate commerce? I'm not sure I'm familiar with that case, Your Honor. I'll tell you the name of it, but go on. What do we make of the Supreme Court's footnote in Saxon, which seemingly puts Rittman's class of last leg delivery drivers within the Section 1 exemption, and by contrast, addresses Grubhub, where it really was local deliverers in Grubhub? And why aren't the people who pick up the ingredients from Domino's part of the last of those materials to the people who are going to actually create the pizzas? Because that leg of the delivery, Your Honor, is made pursuant to an entirely separate intrastate transaction. And if I could explain how the Supreme Court has dealt with that exact issue, because there's a case that's right on point. So what's your distinction? There were two transactions involved. This is the first leg of a new transaction, is what you're saying? The interstate... Right? Answer my question, please. Yes. Yes. You're saying that the other journey ended, the last leg of the journey was over, and this is the first leg of a new journey? Correct, Your Honor. An entirely interstate journey. In the Walling v. Jacksonville paper case, the Supreme Court was tasked with the question of determining whether paper products that a manufacturer had ordered into its in-state warehouse were still in interstate commerce at the time they were delivered to the local customers, the in-state customers. And the Supreme Court drew the exact same distinction that I'm drawing here. To the extent product was always on an interstate journey to an in-state customer, if it had been tagged for that particular customer, if it had been ordered specifically by that particular customer, that interstate journey continued. That's Rittman. However, the Court said that product that was taken into general inventory in anticipation of future sales, and that's this case, those goods were no longer in interstate commerce because there was a separate intrastate transaction. And this Court drew that exact same distinction in analyzing the exact same language in Section 1 of the FAA, and that's the Watkins case, which is on all fours with this, Your Honor. I realize you want to make your point, but if you're correct about that case, then doesn't it follow that Saxon was wrongly decided? I'm sorry, Your Honor, I didn't follow your question. If you're correct that the case you just cited is on point, doesn't it follow that Saxon was then wrongly decided? No, Saxon did not deal with the last mile issue, Your Honor. The question of whether or not there was a separate intrastate transaction was not presented to the Court. That's why the Court carved it out specifically in footnote 2 of its opinion. This Court did address that issue in Watkins v. Ameripride. It's really on point factually with this case. In that case, there was an in-state warehouse, and the wholesaler ordered product from out of state. It came into the in-state warehouse, and an employee picked it up and delivered that product to Ameripride's customers in-state. The question presented was the exact same one here. Was that employee engaged in intrastate commerce for purposes of the Motor Carrier Act? And it was significant because if the employee was, they would have been exempt from the state's overtime law. The Court held, applying Walling, the Supreme Court decision, that that employee was not engaged in intrastate commerce if it was simply delivering goods in-state from that warehouse that had been taken into general inventory. If they were delivering specific goods, goods that had been ordered specifically by a customer, like in Rittman, they would have been in intrastate commerce. But that is . . . Let me, first of all, let me give you the First Circuit case. It's Fraga versus Premium Retail Services. And the First Circuit, after a mediato, says we're still adhering to our previous test, which puts us in conflict with the Fifth Circuit. So just, I'll give you the site. It's 61 F. 4th, 228. You might want to take a look at it, but I'm not going to ask you about it if you don't. It's a March 1st, March 3rd, 2023 case. I want to understand your position on the warehouse. If the franchisee had a standing order to deliver 10 pounds of mushrooms every week, because that's how much they normally used, would the goods be in intrastate commerce in your view? No. Walling says no. Well, no, Walling doesn't say no. See, the distinction you made is that the goods were delivered to the warehouse and then ordered, separately ordered. So I asked you a different question. My question is, what if I'm a Domino's franchisee and I say, look, I know I'm going to need 10 pounds every week. I have a standing order for 10 pounds of mushrooms every week. When they arrive, put them on the truck and deliver them to me. Are those goods in interstate commerce? Not if they are held in general inventory and fungible. And Walling dealt with this exact issue, Your Honor. Now tell me where the fungibility question comes out of the prior cases. I don't see it in any of the cases. If goods, it's the question of whether... Now just tell me, is there a case that deals with fungibility? Walling, Watkins. What kind of goods do we have there? We're dealing with pizza products, products to make pizza in this case. In those other cases. Okay. In Walling, it was paper. And in Watkins, it was linens. And in Walling, Your Honor, the court noted this about the orders that were being placed by customers who had not made specific orders. They held that those goods were not in interstate commerce, even though those customers formed a fairly stable group. The orders were recurrent as to kind and amount. And the manager could estimate those customer needs with considerable precision. That's what the court held. And it held that goods that were used to fill those orders were not in interstate commerce. That may be this case. What I'm trying to do is figure out whether it would be different if the order was made in advance. You're dealing there with somebody who says, I know how much my customers need. I'll bring it in and then they'll order it. I'm asking you, would it be different if the order had been placed before the goods arrived at the warehouse? I don't see why it would be, Your Honor, because you're still dealing with an entirely separate intrastate transaction. That a customer wants a certain quantity of goods does not alter the fact that the order that the employee is dealing with in that case has been an intrastate transaction, a separate transaction from the ones that brought the goods across state lines into the supply center or the warehouse. And that is really the lesson of Saxon, aside from the fact that you disregard the employer's course of business. Well, that's not involved in Saxon at all. We don't know where those goods end up. And for all we know, they are a product of an entirely intrastate transaction after unloaded from the airplane, correct? That's entirely possible, Your Honor. But Saxon teaches us that the employees need to be directly involved and actively engaged. Let me go back to Saxon. Let's assume the facts of Saxon and I'm a person who picks up the goods from the airport and delivers them to someone. Am I involved in intrastate commerce? If these plaintiffs actually... I'm not asking about these plaintiffs. I mean, I understand you want to... Yes, the answer to that question would be yes, and that's the Yellow Cab case from the Supreme Court. In that case, there was two groups of customers that the Supreme Court dealt with. There was one where the train company arranged transport by cab between train stations to continue an intrastate journey. Those cab companies were deemed to be engaged in intrastate commerce because, as in Rittman, there was one continuous intrastate journey involved. For cab companies that were not retained by the train company, that just picked up the customers and transported them wherever, those cab companies were not engaged in intrastate commerce. Let me ask you one last question about Rittman. I've been to lots of Amazon warehouses and sometimes you order things that are already in the warehouse, but the things have come in from out of state. Does Rittman make a distinction between goods delivered pursuant to a prior order, an order that was made before the goods arrived in state or after they arrived in state? It does, Your Honour. In holding that the goods had not completed their intrastate journey, Rittman specifically makes note of the fact that the goods were not transported to the warehouse and held there in anticipation of future sales. And these goods, of course, are. I see I have less than a minute left, Your Honours. If I could reserve that for rebuttal. All right. Thank you, counsel. Mr. Desai. Good morning, Your Honours. Ashish Desai on behalf of the Appellees. The problem we're having here is that Domino's keeps using the wrong test. It keeps coming in here and arguing that there is a difference because there is a contract that it had for these goods and products as opposed to simply a general disposition of the goods. The big problem we have is that's not the law. Supreme Court has never said that. And if the court would take a look at a constitutional accountability brief, which did go into the cases in the early 1920s, which is what we're supposed to do. Saxon tells us to go to the 1920s when the FAA was around. And what did interstate commerce mean at that time? Well, at that time, it meant the continuous shipments of goods to their intended destination. But it meant continuous. And that's the point your friend is making. Well, there we go. No, let me finish. He says it's not a continuous delivery process. These things are brought in in bulk, dropped off at a warehouse, and they're only delivered to the franchisees after an order is made, and that's a sufficient break in the chain. Now, I'm not sure how Saxon changes that. And we tried to deal with that last time, and maybe we came out wrong. But putting Saxon aside for a moment, what's wrong with his argument? Well, we take a look at what a brief pause in the product does to the continuous movement. Tell me what case, what's your best case? Hancock is 1925. I'll give you three cases, and the best one I'll say for last year. No, give me your best one first, because you may not get to your third one. Well, the best one is Cott. And the best one is because it's Justice Cardozo, OK? And he's a good guy. That's at the Erie Railroad Station. There was a conductor on that train. He was delivering meat from one part of Buffalo, which I know Your Honor is familiar with, to East Buffalo. This meat was ultimately destined, of course, for Canada. Well, the conductor died, and they sued under the Federal Employment Liability Act. Well, they said, is he conducting interstate commerce? Well, the defendants in that case, not surprisingly, said almost the exact same thing Domino said here. Wait a minute. This is only part of the journey. There's a different bill, a different lading. There's different contracts involved. Justice Cardozo in that case said, no, no, no. That's not correct. We're not looking at that. We're looking at what is the practical reality of the transaction. Where was this meat headed? Was it headed to East Buffalo? Well, originally for some things, for one part of the step, but the ultimate journey was Canada. And so because of that- Your best case, I take it, is not a Federal Arbitration Act case. That's correct. To show the continuous, what does it mean to disrupt a continuous movement of goods? Nobody doubts that goods on a train that stop in several places but eventually go interstate or in interstate commerce, the argument they're making, and what I'm looking for is some case law if you have it, deals with a different situation. What they're saying is Domino's purchased the goods. They were delivered to Domino's at its warehouse. Domino's then sold the goods to the franchisees. There was a separate transaction, and that transaction is the one in which your clients are involved in. It's an intrastate transaction. So tell me what case you've got that deals with those sorts of facts. Sabine, 1923. In the Sabine case, they had a Texas lumber company. It sold to a completely different company on some other part of Texas, intrastate, with a different contract, a different everything. Eventually, the lumber made its way to Europe, wouldn't you know? And in that particular case, they said, wait a minute, that's interstate commerce. They said, wasn't the interstate commerce broken? Then we have a different contract, a different bill of lading, different people, we don't even know where it's supposed to go. They said, none of that matters. What matters is where did the goods end up? Where is the stream of commerce in this particular case? Here, there is no doubt what is going on. In this particular case, Domino's has hired the big rig drivers themselves. Domino's set up the supply chain center. Domino's actually negotiated the contracts with all the third party issuers and vendors out of state, from Illinois, from Canada, from wherever else they did. And then Domino's set up a supply chain in the entire process where they make the franchisees buy for them. The warehouse, whatever it does, whatever brief period of time, the goods stay there, is irrelevant. There is, yes, Your Honor. Do we have to, should we be looking at the contracts between Domino's and its franchisees to answer this question? I don't think so. As Justice Cardozo said in the Cott case, the interstate status of shipment cannot be determined by mere forms of lading or contract. It's irrelevant. What matters is where was the shipment intended to go? Where is the stream of commerce? The mushrooms, tomatoes, onions, where was this supposed to go? There's no doubt that Domino's intended those products to end up where they eventually ended up, with the franchisees. Let me ask you a question. Maybe I'm missing something. Neither of these cases are cited in either of your briefs, are they? These aren't. That's why I said to please look at the constitutional accountability brief, which really goes into what it meant in 1925 to look at interstate commerce. And it does a better job, I'll admit, than my brief of doing that. We stuck with the facts that we had here. But in fact, if you take a look at Saxon, it says when we're trying to figure out what interstate commerce is and whether the residual clause of Section 1 applies, which is a narrow, narrow group of people, we know that. We know that from Adams. We know that from New Prime. And now we know that from Saxon. But it is not so unlimited so as to capture someone who actually is involved with the shipment of the actual products. It doesn't get any better than this. These are the drivers. What more activity do you want? Let me change the facts for you a little bit. Maybe I can get you to cooperate on them. What if they just ordered lots and lots of ingredients and sometimes they sit in the warehouse for weeks or months, let's assume that they're not ones that spoil, that before somebody ordered them, would that make a difference? Wouldn't make any difference. There's another case in there that talks about it being held for 20, 30 days at a site before it is sent out. The time doesn't matter. What matters is the intention. So your point is that the goods are always moving in interstate commerce? Until they get to their final destination. What is the intended final destination? It still leaves me with the question of whether your clients are engaged in interstate commerce. In other words, you'd agree, for example, that goods delivered to a clothing store. My father owned a men's clothing store. I remember that, Your Honor. He ordered stuff from out of state. That's right. It came in. And then occasionally we would drive them to people's houses when they ordered them. I wasn't involved in interstate commerce, was I? No. It ends at the time that your father purchased it from the manufacturer. Then he's involved in retail sales. Domino's is not involved in retail sales. They're not selling to the public at this warehouse. It could rot there for a year, but they're not selling it to the public. The cheese and the tomatoes and mushrooms get either to the franchisees, or they don't go at all. And they hope and pray. They have an exclusive clientele, if you will. That's right. That's right. Does that make a difference in this case? It makes it better for me. It makes it better for the drivers, because that even shows that this is interstate commerce. How much more direct do you want? Saxon says, the Supreme Court says, you've got to be directly involved. In Saxon, they were loading the boxes. Here, they're driving them away. You don't have to be directly involved in every step of the process. In that process, in that part of the process, part of it is loading the boxes. Part of this is getting them from the warehouse to the franchisees. The getting them to the warehouse to the franchisees, that part are my clients, the big rig truck drivers. And those people are a direct result. Without them, there could be no mushrooms and no onions and no tomatoes at the franchise stores. There's no doubt about it. And so these guys are actively involved. Saxon says so. And if you believe Rittman says what it says, then I believe the court's hands are tied here. Suppose at the warehouse, instead of simply repackaging the, you know, the mushrooms or the flour or what have you, the raw ingredients were processed. So instead of delivering flour, they delivered, you know, mushroom dough or something like that. Uh, is that lattice shipment still part of the same interstate commerce ship? Yeah, I remember last time if they make it into a pizza, then they send it. No, that's no longer interstate commerce. But that's what I said last time. But the more I look at the case in particular, the brief from the constitutional advisory board or whatever the name is, when you take a look at the cases they cited to, there was a cornmeal case or cake case where the guys had a flour or something and then he reshipped it out to be distributed to European, you know, companies. And they said, even in that case, it's still interstate commerce. That Schechter intervened after that. Schechter is the only, Schechter says, if you kill the chickens, they're no longer in interstate commerce, right? That's exactly right, your honor. So I'm not sure how, how much we can rely on pre-Schecter cases for, for not changing the quality of the goods. And we keep in mind, Schechter dealt with poultry. This is a very unique situation. We're dealing with slaughterhouses. They completely, I mean, this is, as we decided, everybody knows that a live chicken and a dead chicken are two completely different things. It's not even in the realm of the of the issue that we're dealing with here. Here we're dealing with ingredients that are basically the same. The tomatoes, the tomato, the mushrooms, the mushroom, how it started when the is essentially almost exactly the same as when the franchisee got it. Now, if that's not an unbroken stream of process, I don't know what is. Let me, let me ask you, and I apologize for the hypotheticals, but they helped me to understand it. What if your drivers worked for Safeway? And the franchisees ordered the mushrooms from Safeway. You would agree that those drivers were not then engaged in interstate commerce, wouldn't you? Under these exact same facts, no, they're not in interstate commerce because you have a third party. We have a true third party transaction, which take place, which isn't, is not intended, in other words, Safeway. So tell me what, tell me what case deals with the relevance of a true third party transaction. The three cases are Hancock 1925, Sabine 1923, and COTT, C-O-T-T, that's the 1921 case, Cardozo. But there's no Federal Arbitration Act case that deals with, with a third party, with the relevance of a third party transaction to your knowledge. There've only been three cases with the FAA and none of those dealt with this particular situation, Your Honor. We all know what those three cases are. Okay. And so unless the court has any more questions for me, I don't want to waste the court's time. We're here on a supplemental argument. And I think that Saxon helps me greatly if that's what the court is here to do. Rittman has not been overturned. As long as Rittman is over, not overturned, we believe that the ruling that the court had last time is sound and should stand and by the way, should be published. Thank you, Your Honors. Thank you, counsel. Just so you don't worry, we have to publish when the Supreme Court remands to us. Yes, we just figured that out, didn't we? Whichever way it turns out. Uh, Your Honors, I just wanted to tell you that the quote from Rittman that I was talking about is on page 916. Two quick points. I think Your Honor's hypothetical proves the point. Let's assume there was a day where no Domino's delivery driver showed up to work. And Domino's decided instead to call Postmates and said, can you please come down here with your vans and pick up product and deliver it to the franchisees? There would be no question that those Postmates drivers are not engaged in interstate commerce. They're doing nothing different than they do when they deliver goods from grocery stores or convenience stores. Under Saxon, that means that the Domino's drivers are not engaged in interstate commerce. Well, here's my difficulty. And this is not an easy case. Saxon doesn't help us because Saxon says we're dealing with a different situation, not with last leg drivers. Your new hypothetical doesn't help me because it's entirely different. The question in my mind is what relevance does it have that these are being delivered to Domino's only for eventual delivery to Domino's franchisees? And so what I'm trying to figure out is what, we all agree that if they'd been delivered and were being sold to a third party after they came out, they wouldn't be in interstate commerce. What's the relevance of this existing relationship where they know and you know, and the record demonstrates that every mushroom that comes in, stops briefly at the warehouse and then moves on to a franchisee? Under Saxon, none at all, because it does not change the role that the workers play in transporting goods across borders, number one. Number two, in both Walling and in Watkins. They don't have to, the employee doesn't have to be the one that actually crosses the border. It just said, look at what, what is the work that they're performing? They need to be directly involved and actively engaged in the transportation of goods across borders. That's what Saxon held. It didn't deal with last mile drivers. Right. But, but our case law says, it's your position that, that Saxon doesn't really, uh, put a thumb on the scale in this case. It puts on a thumb, a thumb on the scale, your honor, to the extent it makes clear that Domino's role here, Domino's relationship has nothing to do with whether or not these particular plaintiffs were engaged in interstate commerce, and I want to go back, your honor, to the, your position is dominant. Does, uh, do you think Domino's compels a different result from the one the panel reached? Does Saxon compel a different result than the one that, I'm sorry. Yes. Saxon. Yes. Yes, it does. Your honor, that this panel held in the prior opinion that Domino's role in interstate commerce was the critical factor. And I believe relied on that factor to take a different path than one, than the one that is set forth in the Supreme court cases and the cases from this circuit, distinguishing between interstate journeys and interstate journeys. But your position is really that we were wrong last time. Yes, your honor. And I say with all due respect. Of course, of course. And I guess I'm trying to figure out what our job is here. We decided the case once the Supreme court says, take another look at it in, in light of Saxon, I must tell you, Saxon, given the footnote in Saxon that says we're not dealing with last leg deliveries doesn't help. I know both sides are arguing it's a slam dunk after Saxon for them, but I'm sort of what judge, where judge Parker's question was, Saxon seems pretty irrelevant to me to decide this case. So how do I, don't I have to, what, what warrant do we have to rewrite our power panel decision? Well, that decision has been, that decision has been vacated your honor. And I believe that the case law before the court, including the Walling decision and the decision from this circuit in Watkins make clear that there is a differentiation under the case law on whether goods end up in general inventory or not, every single case draws that distinction. Okay. But the case was remanded from the Supreme court for us to take another look at it. In light of Saxon and, and in light of footnote two, I'm not clear what work we've got to do on this particular case. Couple of points, your honor. Number one, every case that addresses when goods leave interstate commerce draws a distinction between goods held in general inventory for later sales and goods held for sales to specific customers. Reading the prior opinion, it appears that this panel did not follow those cases because it concluded in accordance with Rittman's directive, that the critical factor, the dispositive factor was the employer's business. If you take that Rittman requirement out of the equation, you are back to what is the standard in every single case. Goods that are held in general inventory for later sales are no longer in the stream of commerce. There is not one case that the plaintiff has cited that brings that rule into question. The fact that Domino's intended these goods to end up in the hands of franchisees is of course irrelevant. Every retailer, every wholesaler intends and wants their goods to end up in the hands of ultimate purchasers. That's the reason they stock them. But unless they stock them by putting a tag on it that says, this goes to Joe Smith, they're in general inventory and they're no longer in the stream of commerce. I see I'm over my time. All right. Thank you, counsel. Judge Barker. Thank you both. Very interesting case. Appreciate your help. Yes. Thank you, Your Honors. Does anybody else have any questions, anything to say? Okay. Thank you very much. Carmona versus Domino's Pizza will be submitted and this session of the court is adjourned for today.
judges: WARDLAW, Parker, HURWITZ